```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
SUSAN MARIE O'BRIEN,                                              :
                                                                  :
                                    Plaintiff,                    :   MEMORANDUM DECISION
                                                                  :   AND ORDER
                    - against -                                   :
                                                                  :   19-cv-1359 (BMC)
NANCY A. BERRYHILL, Acting Commissioner                           :
of Social Security,                                               :
                                                                  :
                                    Defendant.                    :
----------------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that she is not entitled to Social Security Disability benefits under the Social Security Act.

Plaintiff raises two points of error. First, plaintiff contends that the ALJ erred in finding that her cerebrovascular accident (i.e., stroke) impairment is not severe. Second, plaintiff contends that the ALJ failed to conduct a proper credibility analysis. For the reasons stated below, plaintiff's motion for judgment on the pleadings is denied and the Commissioner's cross-motion for judgment on the pleadings is granted.

I.

Plaintiff's first contention is that "[t]he ALJ erred in finding the Plaintiff's CVA impairment is not severe." According to 20 C.F.R. § 404.1522(a), "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding,

carrying out, remembering simple instructions, using judgment, responding appropriately to others, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b).

The analysis at this stage sets a low bar and is meant only to "screen out *de minimis* claims" in which the claimant merely exhibits "slight abnormalities that do not significantly limit any basic work activity." See Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995) (quoting Bowen v. Yuckert, 482 U.S. 137, 158 (1987)). Indeed, an impairment having anything more than a "minimal effect" on a claimant's ability to engage in basic work activities would be considered severe. See 20 C.F.R. §§ 404.1522, 416.922; SSR 85-28. But once an ALJ determines that a claimant does not have a severe impairment, this Court would have to find that the ALJ's decision was unreasonable, i.e. "a reasonable mind" would not have found the evidence "adequate to support [the] conclusion," in order to reverse him. See Richardson v. Perales, 402 U.S. 389, 401.

In this case, the ALJ found that plaintiff had a severe impairment from her degenerative disc disease of the lumbar spine, but not a severe impairment from her stroke:

> The medical record shows that the claimant has anemia and is status-post carotid artery dissection and cerebral infarct, but does not reflect any significant functional limitations attributable thereto. . . . The evidence does not support that the claimant has any residual impairment from her stroke that remained "severe" for at least 12 continuous months. In a letter dated January 21, 2016, her treating neurologist, Dr. Pile-Spellman, indicates that she has minimal neurological deficits and none of the subsequent medical records from any other source contradicts this. In addition, Kathleen Acer, Ph.D., also indicates that any residual mental impairment from the stroke is non-severe. Likewise, the limitation with balance, reported by the neurological CE . . . does not appear to be a significant impairment. For example, the claimant testified that she has never fallen down and she does not require an assistive device, such as a cane, due to balance problems. Additionally, the record does not reflect complaints of balance problems to any treating sources subsequent to the date of her consultative examination, which was less than 12 months after the onset date.

Plaintiff responds, however, that *in combination* with the symptoms from her other medical conditions, her stroke symptoms were both aggravated beyond what they would have been in isolation and also more resistant to recovery.  Taking this into account, she believes that her symptoms of "loss of balance, concentration difficulties, neurocognitive difficulties and fatigue" have been amplified to the point of severity.  Thus, according to plaintiff, the ALJ erred in dismissing the severe impairment, necessitating remand.  I reject this conclusion for two reasons.

First, even if at some point plaintiff exhibited the effects of a severe impairment from her stroke, she failed to prove that the impairment "has lasted or can be expected to last . . . not less than 12 months."  Barnhart v. Walton, 535 U.S. 212, 217 (2002) (quoting 42 U.S.C § 423(d)(1)(A) (omission in original).  Plaintiff had her stroke on March 29, 2015, but according to a January 21, 2016, letter from her treating neurologist to her primary care physician, plaintiff presented "with minimal neurological deficits."  The letter further explained that plaintiff "is neurologically intact" and that her "fundoscopic examination, cranial nerve, deep tendon reflexes, sensation to pin, auscultation of the lungs are unremarkable."  Even in July 2015, plaintiff's neurologist concluded that there was "near-complete resolution of her multiple brachio cephalic cerebral vessel abnormalities."  In addition, the neurologist wrote "Presumable all activity" in the follow-up portion of his report, indicating that he didn't perceive any remaining limitations in plaintiff's ability to function as normal.  This is certainly enough for a reasonable mind to conclude that plaintiff's stroke limitations were not (or no longer were) severe 12 months after onset.

Second, "[w]here an ALJ excludes certain impairments from the list of severe impairments at the second step, any such error is harmless where the ALJ identifies other severe

3

impairments such that the analysis proceeds and the ALJ considers the effects of the omitted impairments during subsequent steps." See Calixte v. Colvin, No. 14-cv-5654, 2016 WL 1306533, at *23 (E.D.N.Y. Mar. 31, 2016) (citing O'Connell v. Colvin, 558 F. App'x 63, 65 (2d Cir. 2014)); Woodmancy v. Colvin, 577 F. App'x 72, 74 n.1 (2d Cir. 2014) ("[W]e identify no error warranting remand because the ALJ did identify severe impairments at step two, so [plaintiff]'s claim proceeded through the sequential evaluation process, in which all of [plaintiff]'s ailments were part of the analysis."). Here, the ALJ very clearly considered the claimed effects of plaintiff's stroke in determining her residual functional capacity (in between Steps Three and Four):

> The claimant testified she experienced a stroke and underwent multiple angiograms to monitor how the condition was resolving. She stated she was experiencing right side paralysis and she could not speak. She stated since, she has had terrible *fatigue* and issues with *concentration*. She stated she has a little *weakness* on the right side and *balance* issues. She stated she has a poor gait; but does not use a cane, nor has she fallen.
> …
>
> However, her further statements are not indicative of total disability. For example, she stated she is able to do light household chores, run errands and goes to her mother's house for breakfast. She is able to drive locally and grocery shop. In a function report dated October 26, 2015, the claimant stated she is able to prepare breakfast, run errands on to two times a week and prepare dinner. She can do light laundry, socializes and occasionally goes out for dinner.

(Emphases added.) It is thus apparent that, despite finding plaintiff's stroke effects non-severe, the ALJ still considered her fatigue, concentration, weakness, and balance issues during subsequent steps of the analysis.

II.

Plaintiff also contends that "the ALJ failed to make a proper credibility analysis because he failed to consider Dr. Rauchwerger's medical records" in evaluating plaintiff's credibility. An "ALJ must make credibility findings when there is conflicting evidence with respect to a

4

material issue such as pain or other disability." Donato v. Sec'y of Dep't of Health & Human Servs. of U.S., 721 F.2d 414, 418 (2d Cir. 1983). Pursuant to SSR 96-7P, in assessing a claimant's credibility, an ALJ must "consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms . . . and any other relevant evidence in the case record."

Assuming "the subjective evidence of [a claimant's] pain" is sufficient to establish her disability, if the ALJ did "not consider the credibility of [a claimant's] claims of disabling pain, but instead rejected her claims on the ground that objective, clinical findings did not establish a cause for such intense pain," then the decision should be reversed and the case remanded. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). However, in considering a plaintiff's complaints of pain, "the ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Id. Evidence such as the claimant's daily activities; the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; and other pain relief measures may also be considered. 20 C.F.R. § 404.1529(c)(4).

Dr. Rauchwerger is plaintiff's pain management specialist. According to plaintiff, Dr. Rauchwerger's treatment notes show that (1) plaintiff's diagnostic imaging demonstrates a lack of improvement in her lower back and leg pain; (2) clinical findings and course of treatment demonstrate symptoms of pain and limitations; and (3) any relief plaintiff may have experienced was temporary. The ALJ ultimately determined that the objective medical evidence does not support a disability finding and then properly proceeded to analyze plaintiff's subjective complaints (i.e., her credibility). Yet although the ALJ considered Dr. Rauchwerger's records in

5

assessing the medical evidence, plaintiff argues that the ALJ failed to consider Dr. Rauchwerger's records in *assessing plaintiff's credibility*. I disagree.

As an initial matter, plaintiff testified at her hearing that, on a daily basis, her back pain is only "maybe around a three or a four" on a scale from 1-10. That representation likely removes from the realm of reversible error any failure on the ALJ's part to consider plaintiff's credibility because such mild pain would generally not evidence a total inability to work. See Marcus, 615 F.2d at 27 (holding that reversal is proper where the ALJ "did not consider the credibility of appellant's claims of *disabling* pain" (emphasis added)); see also Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (finding remand "unnecessary" where there was "no reasonable likelihood" that a new consideration "would have changed the ALJ's determination that Petitioner was not disabled").

In any event, the record shows that the ALJ *did* consider the objective medical data – including that of Dr. Rauchwerger's treatment – in evaluating plaintiff's credibility:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not supported by the evidence of record.
>
> The claimant also complains of back pain. An EMG test showed right L5 nerve damage. An MRI of the lumbar spine taken on February 8, 2016 showed mild right hydronephrosis, L4-5 right disc herniation with a superiorly oriented extrude component compressing the exiting L4 nerve root and descend the right L5 nerve root. Examinations showed normal gait and lower extremity strength 5/5. The claimant underwent a series of epidural steroid injections and reported significant relief (90-95% improvement). Treatment included epidural steroid injections. At the hearing, the claimant testified she had five epidural steroid injections, which have significantly helped. She stated after her initial injection, she did not require any pain medications.

The foregoing demonstrates that, in the course of analyzing plaintiff's subjective "statements about the intensity, persistence, and limiting effects of her symptoms," the ALJ considered

6

plaintiff's diagnostic imaging and her doctors' clinical findings and course of treatment.[1]  There was thus no error.

## CONCLUSION

Plaintiff's [12] motion for judgment on the pleadings is denied and the Commissioner's [13] cross-motion for judgment on the pleadings is granted.  The Clerk is directed to enter judgment, dismissing the case.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       May 8, 2020

---

[1] To the extent plaintiff is arguing that the ALJ should have mentioned Dr. Rauchwerger *by name* in the credibility analysis, I reject such a requirement.

7